## IN THE MATTER OF THOMAS PEDRO, JR., AN ATTORNEY AT LAW.

### No. 2099.

ARGUED JUNE 29, 1933.                    DECIDED JULY 6, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE GODBOLD
IN PLACE OF PARSONS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY BANKS, J.

On December 14, 1932, the attorney general of the Territory filed in the circuit court of the fourth judicial circuit an information charging that Thomas Pedro, Jr., a duly licensed district court practitioner having his office in Hilo, had, on the dates mentioned in the information, committed three separate and distinct acts of professional misconduct in violation of his duty as an attorney at law, and praying that a rule issue to the said Thomas Pedro requiring him to appear and show cause why his name should not be stricken from the roll of practitioners in the district courts of the Territory. The rule was duly issued and served and on January 7, 1933, Pedro filed his return. In his return he denied that he had been guilty of any of the acts charged against him. On the hearing the circuit judge decided against Pedro and adjudged that he be disbarred. The case is here on appeal.

The first charge made in the information is that "the said Thomas Pedro, Jr., did, in his law office in Hilo, County and Territory of Hawaii, on or about the 14th day of April, 1930, attempt to bribe one Lee A. Pearson, a federal prohibition agent, by offering to pay the said Pearson one thousand dollars ($1000.00) per month if he, the said Pearson, would agree not to arrest, or otherwise interfere with the unlawful manufacture and/or sale of intoxicating liquor by certain alleged bootleggers whom the said Pedro claimed to represent."

Three witnesses testified concerning this charge. Two of them, Lee A. Pearson and E. C. Knudsen, were officially connected with the enforcement of the National Prohibition Law on the Island of Hawaii. The third witness

was Thomas Pedro, Jr., the respondent. There was a sharp and irreconcilable conflict between Pedro's testimony and that of the other two witnesses regarding the truth of the charge. In his written decision the circuit judge who tried the case expressed the opinion that Pearson and Knudsen had told the truth and that Pedro had not. He had these witnesses under observation and heard them testify. Under these circumstances we are reminded of the rule that has long obtained in this jurisdiction when a judgment or decree rendered at chambers is brought here on appeal. This rule is that while in such cases we have the power to review the testimony and reach a different conclusion from that reached by the circuit judge, his factual findings are nevertheless entitled to great weight and will generally not be disturbed.

It is contended by the respondent that the circuit judge was so obviously wrong in believing Pearson and Knudsen instead of Pedro that we should reverse the judgment. Because of this contention we will review the testimony in some detail.

Pearson testified that he had been federal prohibition agent for the district of the Territory of Hawaii since November, 1929; that on April 14, 1930, while he was at lunch, he received a telephone call from Pedro asking him to call at his office; that at about 1:30 o'clock he went to Pedro's office which was in the Burns building in Hilo; that no one other than himself and Pedro was there and that as he sat down Pedro said to him, "'As the bootleggers are afraid of you and me, and I being an attorney, they want me to make a proposition to you.' He said, 'This is the proposition. There are eight big bootleggers in Hilo, and some others, making twenty altogether that want to pay you $50.00 a month each for protection, making a total of $1,000.00 per month.' I asked Mr. Pedro why he came to me with that proposition.

Pedro said, 'The bootleggers wanted a third man, so that if anybody was watching their movements they would know.' Then I asked Mr. Pedro why they did not approach Mr. Bowman as he was the agent in charge in Hilo at that time. He said, 'The bootleggers know you are the outside man, and know the bootleggers and the places.' I asked Mr. Pedro for a list of the bootleggers who wanted to pay me for protection. He read off the names of Kitagawa, Miyamoto, Abe, Kita, Yamashira, Kuwada. I told Pedro I would not have anything to do with the proposition." Pearson also testified that the same afternoon he reported this conversation to Mr. Bowman, his official superior, and later, by Bowman's instruction, he reported it to the Honolulu office.

Pedro in his testimony, after admitting that Pearson came to his office on the afternoon of April 14, in response to his call, testified as follows regarding what he said to Pearson on that occasion: "When he arrived at my office I told him I had called him down to the office so that I can tell him of. the violations going on, without any apparent interest on his part as prohibition agent; that he was not doing his duty; what he was doing then was practically what his predecessor, Fred Wood, prohibition agent, did, and for such inactivity I reported him to the authorities in Honolulu. * * * I told him I had made up my mind to report him also to Honolulu, if he did not take more interest in his work and do his duty as prohibition agent, and that, if upon reporting him to Honolulu I did not get any results then I would write to Washington direct." And when asked what Pearson said to that, his answer was, "I don't recollect the words, but suddenly he rose, left my office, and went out." He also testified that Pearson's attitude seemed hostile.

The record shows that on October 8, 1930, Pedro, Pearson, Knudsen and Bowman (who was deputy admin-

istrator), met in the office of the prohibition agent in Hilo. All of these persons (except Bowman) testified regarding what was said at that meeting. Pearson testified that Knudsen said to Pedro, " 'I heard, Mr. Pedro, that you had reports to make of bootlegging in Hilo.' Pedro said he was going to report everything, all the places running wide open, and that he wanted something done. Mr. Knudsen asked him, 'We want the facts,' and he wanted to know if Pedro would sign affidavits to enable us to obtain search warrants. He said that wasn't his job and it was up to us to catch them. He said that if he had been elected sheriff he would clean up the place, and as a good citizen he wanted us to do something. I said, 'Yes, as a good citizen you acted as messenger for the bootleggers, trying to bribe me.' He said, 'I only did that for the reason that I wanted to catch the bootleggers when they gave you the money.' Knudsen asked him if he was going to share that money if I accepted. He said, 'No, all I did that for was to try to catch the bootleggers.' " Pearson was asked by Mr. McGhee, the deputy attorney general, whether there was any conversation at that time about whom these alleged bootleggers were. The answer was, "Knudsen asked him who had him approach me and he said Mr. Kuwada had him approach me, and Kuwada represented the others."

Knudsen, testifying in regard to what conversation was had at this meeting, said (addressing himself to Pedro) : " 'I understand you are making complaints to the assistant district attorney who is in town this morning.' He said, 'Yes, I am going to tell him all about the bootlegging operations in town.' I asked him what he knew about the bootleggers. He said he knew all about them, that they were running wide open, that anybody could buy liquor in town. I then asked him if he would sign affidavits, whereby I could obtain search warrants.

He said, 'No, I am telling you where they are. It is up to you to catch them.' I then asked him why he was taking such an interest in our department, in what our department and the police department were doing with the bootleggers. He said, 'As a good American citizen, I want these bootleggers caught and put in jail.' Pearson then asked him, 'As a good American citizen you acted as a messenger for the bootleggers to offer me money?' Pedro said, 'No, I asked you up so that you could catch them when you took the money; I did that as a good American citizen.' I said, 'Did you expect to pay any of the money in case Pearson accepted the offer?' He said, 'No.' I then asked him, if everybody in this community knew that he was so anxious to put the bootleggers in jail; he said 'Yes.' I asked him if all the bootleggers know that too, and he replied 'Yes' to that. I then said, 'It seems queer to me that, if the bootleggers know you want to put them in jail they should pick you, out of all men, to approach Pearson.' He said, 'What are you trying to do, question me?' I said, 'No, I just want to find out what you know about it, and how you stand.' I said, 'Which one of the bootleggers sent you to see Mr. Pearson?' He said, 'Kuwada and some others. I gave Mr. Pearson the list when he was in my office.' Mr. Pedro then told me about some violators out in Honokaa, a couple of men who wanted to be informers—had applied for jobs in our department as informers; our department had paid no attention to them. I then thanked him for his interest in the enforcement of the National Prohibition Act, and Mr. Pedro left the office."

The transcript discloses that the following questions were propounded to Pedro by his counsel and that he gave the following answers: "Q Things went on, then, until October, somewhere around the 7th or 8th, when the district court came up from Honolulu—A The United

States district court was holding a session here. Assistant United States Attorney Moore came up. Knowing of the inactivity of the prohibition agent here, I came up to see Mr. Moore and made complaint to him. Shortly after that while I was still in the building here Mr. Knudsen came to me and asked me if I would step over there to his office. I said I would. I went over. When I got in there Pearson was at the door. He closed the door after I got in. Bowman was at his desk and Knudsen asked me, 'What interest have you in this matter of prohibition?' I said, 'The interest of a good United States citizen, that is, when such a citizen knows of violation of federal laws such as this he has to report to the officers who are charged with the duty of arresting the violators.' Q By the way, just there, did he give any indication that he knew you had been talking with Mr. Moore, the district attorney? A No, I took it for granted; he did not give any indication, but I sort of thought Mr. Moore must have mentioned it to them. Q He started off with the question, 'What interest have you got—?' A Yes. Q As if something had arisen at that time to cause him to question your interest? A Yes. Q All right. Go on. A Knudsen said, 'Are you willing to sign affidavits, or swear to affidavits?' I said, No. I will give you the information. It is your business to go out and arrest these people. I am doing my duty. So far I will do.' Q Mr. Knudsen purported to give a lengthy conversation between you and himself regarding the alleged interview in your office with Mr. Pearson, and your proposition to Mr. Pearson in regard to bribery for bootleggers' protection. What have you to say with regard to that? A I did not make any reference to bribery, for no such thing took place in my office. Q You made no reference to it in your talk with Knudsen in their office here? A No sir. Q Because there was no such thing? A Because there was no such

thing. Q He did not ask you then, to this effect, if you were so much interested, as a good citizen of the United States, why did you approach Mr. Pearson with an offer of bribery from the bootleggers? He did not ask you anything of that sort? A No. As I recall it he did not ask me such a question. Q And you did not tell him you brought that up to Mr. Pearson to enable him to catch the bootleggers? A No. Q Have you stated, as far as you recall it, the conversation, and the whole conversation, which took place in the office over here (Federal Building)? A Yes, as I recall it."

The foregoing comprises the material testimony bearing directly on the charge of attempted bribery. It is obvious that that given by Pedro is in irreconcilable conflict with that given by Pearson and Knudsen. If the former told the truth the latter did not, and *vice versa*. It is claimed by Pedro that Pearson and Knudsen were hostile to him because he had reported their inactivity and incompetency to Mr. Moore, the deputy United States attorney, and therefore their testimony should not be believed. The only testimony which gives any color to this contention was furnished by Pedro and Knudsen. Pedro testified that "knowing of the inactivity of the prohibition agent here, I came up to see Mr. Moore and made complaint to him." When asked whether Knudsen gave any indication that he knew the witness had been talking with Mr. Moore Pedro answered, "No. I took it for granted; he did not give any indication, but I sort of thought Mr. Moore must have mentioned it to them." On cross-examination the following questions were propounded to Knudsen and he gave the following answers: "And you had heard that morning that Mr. Pedro had gone to Mr. Moore to complain about the way in which the prohibition office here was conducting its duties? A That is what I understood he was going to do or had

done. Q And because of that fact you took occasion to call Mr. Pedro to your office? A Yes. Q And asked him why he was so much interested? A Yes."

Conceding that this testimony is sufficient to show that in 1930 Pedro made complaints to Moore about the inefficiency of Pearson and Knudsen and that this was reported to them by Moore we think it does not justify the conclusion that in February, 1933, more than two years afterwards, when this testimony was taken, their animosity towards Pedro was so strong as to impel them to testify falsely against him. This conclusion is strengthened by the fact that whatever Pedro may have said against Pearson and Knudsen, so far as it affected their official standing, was innocuous. There is nothing in the record to indicate that they were removed from office. On the contrary they were still in the prohibition service at the time they were called as witnesses in the instant case.

Regarding the other two charges, we are in doubt as to whether they were sufficiently proven. However this may be, there is no doubt that the offense of attempting to bribe a federal prohibition agent warrants the judgment of disbarment entered by the circuit judge. Indeed no contrary claim is made.

The judgment appealed from is affirmed.

*E. R. McGhee,* Deputy Attorney General (*H. R. Hewitt,* Attorney General, with him on the brief), in support of the information.

*W. H. Smith* (also on the brief) for respondent.